IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| HENRY D. HOWARD, EARNEST G. SMITH, GLORIA FRAZIER, THOMAS WALKER, KENNETH MARTIN, MELVIN IVEY, and ALBERT ROBINSON, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>AUGUSTA-RICHMOND COUNTY, GEORGIA, COMMISSION; DEKE S. COPENHAVER, in his official capacity as Mayor of Augusta-Richmond County; and LYNN BAILEY, in her official capacity as Executive Director of the Richmond County Board of Elections,<br><br>Defendants. | Case No. _____ |

## COMPLAINT

### NATURE OF THE CASE

1. This is an action to enforce rights guaranteed to Plaintiffs by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, pursuant to 42 U.S.C. § 1983.  At issue is the decision of the Defendants to change elections for the Augusta-Richmond County Commission and Mayor, from the date of the general election in November to the date of the statewide primary election, on May 20, 2014, despite a previous objection to the change by the Department of Justice under Section 5.  The Plaintiffs seek declaratory and injunctive relief prohibiting the Defendants from enforcing the objected to voting change.

### JURISDICTION AND VENUE

2. This civil action arises under the Constitution and laws of the United States.

1

3. This action is authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

4. This action is authorized by 42 U.S.C. § 1973j to secure equitable and other relief under an act of Congress providing for the protection of civil rights.

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 42 U.S.C. § 1973j(f).

6. This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284, a three-judge district court is required to hear the Plaintiffs' claim under § 5 of the Voting Rights Act.

8. Venue is proper in the Southern District of Georgia, Augusta Division, pursuant to 28 U.S.C. § 1391(b).

PARTIES

9. Plaintiffs Henry D. Howard, Earnest G. Smith, Gloria Frazier, Thomas Walker, Kenneth Martin, Melvin Ivey, and Albert Robinson, Jr. are African American residents and registered voters of Richmond County, Georgia, and will be adversely affected by Defendants' implementation of a change in the date of elections for the Augusta-Richmond County Commission and Mayor objected to by the Attorney General under Section 5 of the Voting Rights Act as having a discriminatory purpose and effect. All Plaintiffs are eligible to vote for Mayor, which office will be filled at the 2014 election. Plaintiffs Howard and Walker are residents of District 2 and Plaintiffs Ivey and Robinson are residents of District 4 in which elections will be held in 2014.

10. Defendant Augusta-Richmond County Commission is a political subdivision of the State of Georgia and as such is a corporate body under Georgia law subject to suit.

11. The Augusta-Richmond County Commission was incorporated by an Act of the General Assembly of Georgia in 1995, and has since operated under the direction of a commission-council form of government.

12. Defendant Deke S. Copenhaver is Mayor of the Augusta-Richmond County Commission. He is sued in his official capacity.

13. Defendant Lynn Bailey is the Executive Director of the Richmond County Board of Elections, and has general supervisory authority over elections in the county, including for the County Commission and Mayor. She is sued in her official capacity.

14. The Defendants, both personally and through the conduct of their agents, servants and employees, were and are acting under color of state law at all times relevant to this action.

## FACTS

15. The Augusta-Richmond County Commission consists of ten members, eight of whom are elected from eight single-member districts (Districts 1-8), and two of whom are elected from two super districts (Districts 9-10), each of which contains approximately one half of the county population. The Mayor is elected at-large.

16. Elections for the County Commission and Mayor are nonpartisan, and terms of office are for four years. Terms of office for the County Commission are staggered. Elections in 2014 will be held for Districts 2, 4, 6, 8 and 10, and for Mayor.

17. In 2011, the Georgia General Assembly amended Ga. Code Ann. § 21-2-139(a) to allow municipalities to follow their charter provisions for purposes of holding elections. Augusta-Richmond regarded itself as following municipal election rules and that its general nonpartisan consolidated elections would be held at the time of the November general election and not at the time of the primary.

18. In 2012, the General Assembly enacted Act No. 719, Section 9 of which amended Ga. Code Ann. § 21-2-139(a) to provide that, for purposes of determining when elections should be held, all consolidated governments in Georgia holding nonpartisan elections should be treated as counties, not as municipalities, and that the elections would be held in conjunction with the state primary elections in even numbered years. The only effect of the amendment was that elections for the Augusta-Richmond County Commission and Mayor would be shifted from November to July, when the statewide primaries are held. The other six consolidated governments in Georgia either did not have nonpartisan elected offices or already elected their nonpartisan offices in July.

19. Georgia submitted the 2012 change to the Department of Justice (DOJ) for preclearance under Section 5 of the Voting Rights Act and DOJ entered an objection on December 21, 2012. Letter from Thomas E. Perez, U.S. Assistant Attorney General, to Dennis R. Dunn, Georgia Deputy Attorney General (Dec. 21, 2012). Black persons are 54.4% of the total population, and 50.9% of the voting age population, in Augusta-Richmond County. DOJ concluded that minority turnout would be lower in July than in November and the change would have a "retrogressive effect." According to DOJ, in 2012, "in percentage terms, black persons were 55.4 percent less likely to vote in July than in November, while white persons were only 41.4 percent less likely to vote." In the 2010 elections, "black voters constituted 53.2 percent of the electorate in November, but only 43.4 percent in July." DOJ also held the evidence "precludes a determination that the state has met its burden of showing that the purported change was not adopted, at least in part, with a discriminatory purpose." The State of Georgia did not seek judicial preclearance of the voting change, so DOJ's Section 5 objection remained in effect.

20. In *Shelby County, Alabama v. Holder*, the Court subsequently invalidated the Section 5 coverage formula, Section 4(b) of the Voting Rights Act, adopted by Congress in 2006, as being "based on decades-old data and eradicated practices." 133 S. Ct. 2612, 2627 (2013). But it left Section 5 itself intact and noted that "Congress may draft another formula based on current conditions." *Id.* at 2631. The Court did not hold or suggest that Section 5 objections made after the 2006 extension were unconstitutional or unenforceable but only that "[t]he formula in that section can no longer be used as a basis for subjecting jurisdictions to preclearance." *Id.* In addition, the objection to the change of the date of elections for the Augusta-Richmond County Commission and Mayor was not based "on decades-old data and eradicated practices" but on current conditions in Augusta and Richmond County.

21. The new rule in *Shelby County* was also not applied retroactively to voting changes that had been objected to in Shelby County after the 2006 extension of Section 5 coverage. As the Court noted, "the Attorney General has recently objected to voting changes proposed from within the county." 133 S. Ct. at 2621. These included an objection to annexations and a 2008 redistricting plan submitted by the City of Calera. *See id.* at 2646 (Ginsburg, J., dissenting). But nothing in *Shelby County* suggests these objected to changes can now be implemented.

22. On January 17, 2014, Deputy Legislative Counsel H. Jeff Lanier wrote to Representative Wayne Howard that while the coverage formula of Section 5 was held to be unconstitutional in *Shelby County*, the DOJ objection to the 2012 amendment "is still valid" and elections for the Augusta-Richmond County Commission and Mayor "can continue to be held in November."

23. In 2014, the General Assembly adopted HB 310, which changed the statewide primary election date from July to May, to comply with the decision in *United States v. Georgia*,

892 F. Supp. 2d 1367 (N.D. Ga. 2012), which held that Georgia had to provide for at least 45 days of absentee voting to comply with the Uniformed and Overseas Citizen Absentee Voting Act of 1986 (UOCAVA).  But according to Deputy Legislative Counsel Lanier in his letter to Rep. Howard, the bill did not affect municipal elections or alter elections being held for the Augusta-Richmond County Commission and Mayor in November.

24. *Shelby County* should not be applied retroactively to invalidate the DOJ objection to the change in the date of elections for the Augusta-Richmond County Commission and Mayor because the objection was not involved in a case still open on direct review at the time of the *Shelby County* decision.

25. The denial of the retroactive application of a new principle of law would be appropriate if such a limitation would avoid injury or hardship without unduly undermining the purpose and effect of the new rule.  Even assuming *Shelby County* could be applied here, denial of retroactive application would be appropriate because it would avoid injury and hardship to minority voters which was detailed by DOJ in its objection letter.  In addition, denial of retroactivity would not only not undermine, but would uphold the purpose and effect of *Shelby County*, which confirmed the constitutionality of Section 5 as well as "the permanent, nationwide ban on racial discrimination in voting found in § 2."  133 S. Ct. at 2631.  Allowing a voting practice that was found to have a discriminatory purpose and effect to be implemented would be contrary to the basic purposes of the Voting Rights Act.

26. Despite DOJ's Section 5 objection to the change of the date of elections for the Augusta-Richmond County Commission and Mayor, Defendants have announced that the elections will be held at the time of the statewide primary election on May 20, 2014, rather than at the time of the general election in November 2014.

## THE NEED FOR INJUNCTIVE RELIEF

27. A real and actual controversy exists between the parties.

28. The Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for declaratory and injunctive relief is their only means of securing adequate redress from the unlawful practices of the Defendants.

29. The Plaintiffs will continue to suffer irreparable injury from the acts, policies, and practices of the Defendants set forth herein unless enjoined by this Court.

30. Plaintiffs seek injunctive relief only as to the elections for the Augusta-Richmond County Commission and Mayor and not for any other local, county, state, or federal election scheduled for the May 20, 2014 primary.  Plaintiffs also do not seek to change the dates for candidate qualifying for elections for the County Commission and Mayor.  The relief requested will thus have limited and minimal impact.

## REQUEST TO CONVENE A THREE-JUDGE COURT

31. Pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, Plaintiffs request the convening of a Three-Judge Court under 42 U.S.C. § 2284.

## CLAIMS FOR RELIEF

### Count One: Violation of Section 5 of the Voting Rights Act

32. The Defendants' enforcement of a change in the date of elections for the Augusta-Richmond County Commission and Mayor, to which DOJ objected, is in violation of Section 5 of the Voting Rights Act.

WHEREFORE, Plaintiffs respectfully pray that this Court:

(1) take original jurisdiction over this case;

(2) enter a declaratory judgment that further enforcement of the change in the date of elections for the Augusta-Richmond County Commission and Mayor, to which DOJ objected, is in violation of Section 5 of the Voting Rights Act;

(3) enter a permanent injunction prohibiting the Defendants and their officers, agents, employees, attorneys, and successors in office, and all other persons in concert or participation with the Defendants, from any further use of the change in the date of elections for the Augusta-Richmond County Commission and Mayor objected to by DOJ;

(4) enter a permanent injunction requiring the Defendants and their officers, agents, employees, attorneys, and successors in office, and all other persons in concert or participation with the Defendants, to conduct elections for the Augusta-Richmond County Commission and Mayor on the date of the November 2014 general election;

(5) award Plaintiffs the costs of this action together with their reasonable attorney's fees pursuant to 42 U.S.C. §§ 1988 and 1973*l*(e); and

(6) retain jurisdiction of this action and grant Plaintiffs any further relief which may, in the discretion of this Court, be necessary and proper to ensure that timely and lawful procedures are used in elections for the Augusta-Richmond County Commission and Mayor.

Dated this 18th day of April, 2014.

Respectfully submitted,

s/M. Laughlin McDonald

_____
M. LAUGHLIN McDONALD (#489550)
American Civil Liberties Union
 Foundation, Inc.
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 500-1235
(404) 565-2886 (fax)
lmcdonald@aclu.org

ATTORNEY FOR PLAINTIFFS