IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| HENRY D. HOWARD, EARNEST G. SMITH, GLORIA FRAZIER, THOMAS WALKER, KENNETH MARTIN, MELVIN IVEY, and ALBERT ROBINSON, JR., <br><br> Plaintiffs, <br><br> v. <br><br> AUGUSTA-RICHMOND COUNTY, GEORGIA, COMMISSION; DEKE S. COPENHAVER, in his official capacity as Mayor of Augusta-Richmond County; and LYNN BAILEY, in her official capacity as Executive Director of the Richmond County Board of Elections, <br><br> Defendants. | * * * * * * * * * * * * * * * * * * * * * | CV 114-097 |

**O R D E R**

On May 13, 2014, this Court granted Defendants' motion to dismiss, holding that Plaintiffs could not state a cognizable claim for relief under Section 5 of the Voting Rights Act. Now before the Court is Defendants' motion for attorneys' fees pursuant to the Voting Rights Act, 42 U.S.C. § 1973*l*(e), and 42 U.S.C. § 1988, which the Court hereby **GRANTS**.

**I. BACKGROUND**

On April 18, 2014, Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1973j to enforce rights under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. Specifically,

Plaintiffs sought to enjoin Defendants Augusta-Richmond County, Georgia, Commission ("County Commission"), Deke S. Copenhaver, in his official capacity as Mayor of Augusta-Richmond County, and Lynn Bailey, in her official capacity as Executive Director of the Richmond County Board of Elections (collectively, "Defendants"), from holding elections for Mayor and the County Commission on May 20, 2014.

In 2011, the Georgia General Assembly amended O.C.G.A. § 21-2-139(a) to move all federal, state, and county nonpartisan elections to the date of the general primary. (Compl. ¶ 17.) However, this amendment permitted municipalities to follow their charter provisions regarding election dates. (Id.) Augusta-Richmond County is a consolidated government and determined that under its charter it was more appropriate to follow the municipal election rules. (Id.) Thus, it held the 2012 elections at the time of the November general election, and not at the time of the primary. (Id.)

In 2012, the General Assembly enacted Act No. 719, which amended O.C.G.A. § 21-2-139(a) to provide that all consolidated governments holding nonpartisan elections should be treated as counties for election purposes, so that elections would be held in conjunction with the state primaries. (Id. ¶ 18.) This resulted in changing the date of the 2014 elections for the County Commission and Mayor from November to July. (Id.) At the time, Augusta-Richmond County was the only consolidated government in Georgia to hold elections for nonpartisan offices in November.

2

(Id.) Georgia submitted Act No. 719 to the Department of Justice ("DOJ") for preclearance under Section 5 of the Voting Rights Act. (Id. ¶ 19.) Citing statistics showing minorities are less likely to vote in July than in November, the DOJ entered an objection on December 21, 2012. (Id.) Georgia did not seek judicial preclearance of Act No. 719 at that time. (Id.)

On June 25, 2013, the United States Supreme Court decided Shelby County, Ala. v. Holder, 133 S. Ct. 2612 (2013). The Georgia General Assembly then adopted Act No. 343, moving the statewide primary and nonpartisan elections from July to May. (Compl. ¶ 23.) Subsequently, qualifying for the May 20, 2014 election was held on March 3-7, 2014, pursuant to O.C.G.A. § 21-2-132(c). (Doc. no. 17, Ex. 1 at 2.) Nineteen candidates qualified for the five County Commission seats and Mayor's race. (Id.) Absentee voting began on April 4, 2014. (Id. at 3.)

On April 18, 2014, forty-two days following the close of qualifying and two weeks following the commencement of absentee voting, Plaintiffs filed their Complaint to enjoin the May 20, 2014 elections. (Doc. no. 1.) A few days later on April 21, 2014, Plaintiffs filed their motion for appointment of a three-judge court. (Doc. no. 4.) On April 22, 2014, this Court entered an Order setting an expedited briefing schedule. (Doc. no. 7.) That same day, Plaintiffs filed their motion for preliminary injunction. (Doc. no. 8.) Defendants timely filed their motion to dismiss (doc. no. 17), response in opposition to Plaintiffs' motions for appointment of a three-judge court (doc. no. 18), and response in

opposition to the preliminary injunction (doc. no. 19) on April 30, 2014. After full briefing on the issues, the Court granted Defendants' motion to dismiss, denied Plaintiffs' motion for appointment of a three-judge court, and denied as moot Plaintiffs' motion for a preliminary injunction.

On June 24, 2014, Defendants' submitted their motion for reasonable attorneys' fees, to which Plaintiffs responded on July 7, 2014. (Docs. no. 26, 27.) Having been fully briefed on the issues, the Court now issues its ruling on the motion for reasonable attorneys' fees.

## II. DISCUSSION

In addressing Defendants' motion, the Court engages in a two part inquiry. First, the Court addresses whether attorneys' fees are appropriate and then, because it finds attorneys' fees are warranted, it addresses the reasonableness of the fees requested.

### A. Appropriateness of an Award of Attorneys' Fees

Plaintiffs raised claims under the Voting Rights Act of 1965, 42 U.S.C. 1973j, and 42 U.S.C. § 1983. Section 1973*l*(e) of the Voting Rights Act allows courts to award reasonable attorneys' fees to prevailing parties in actions brought under the voting guarantees of the Fourteenth and Fifteenth Amendments, and 42 U.S.C. § 1988 allows prevailing parties to seek attorneys' fees in actions under Section 1983. The standards of the two statutes are the same, and thus the Court addresses them together. See Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000). While

4

all a plaintiff must show to receive an award of attorneys' fees under these statutes is that he is a "prevailing party", given the "quite different equitable considerations" at stake, fee awards to prevailing defendants are judged under a different standard. Fox v. Vice, 131 S. Ct. 2205, 2213 (2011) (internal quotation marks omitted). Accordingly, a district court may award attorneys' fees to prevailing defendants only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Id. (quoting Christianburg Garment Co. v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 421 (1978). Therefore, to determine whether attorneys' fees are appropriate in the above-captioned matter, the Court must address whether Defendants were prevailing parties and next whether the action was frivolous, unreasonable, or without foundation.

### i. Defendants Were "Prevailing Parties."

"A defendant is a prevailing party if the plaintiff achieves none of the benefits sought in bringing its lawsuit." Pickett v. Iowa Beef Processors, 149 F. App'x 831, 832 (11th Cir. 2005). Here, Defendants' motion to dismiss was granted, and the Plaintiffs' claims dismissed. Thus, it is clear that Defendants are "prevailing parties."

### ii. Plaintiffs' Claim Was Frivolous, Unreasonable, or Without Foundation.

"In determining whether a suit is frivolous, 'a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather

5

than whether the claim was ultimately successful.'" Sullivan v. Sch. Bd. of Pinellas Cnty, 773 F.2d 1182, 1189 (11th Cir. 1985) (quoting Jones v. Tex. Tech. Univ., 656 F.2d 1137, 1145 (5th Cir. 1981)). Critically, cases finding frivolity generally involve motions for summary judgment or motions for involuntary dismissal where the plaintiffs did not support their claims with any evidence. Id. Where, however, plaintiffs introduce evidence to support their claims, "findings of frivolity typically do not stand." Id.

The Eleventh Circuit has identified several non-dispositive factors to determine whether an action is frivolous, carefully noting however that they do not provide a "hard and fast rule[]" and such decisions must "be made on a case-by-case basis." Id. These factors include: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Bruce v. City of Gainesville, Ga., 177 F.3d 949, 952 (11th Cir. 1999) (citing Sullivan, 773 F.2d at 1189).

In arguing that Plaintiffs' claim was frivolous, Defendants point to this Court's Order granting the motion to dismiss, wherein the Court found that no other court considering the same issues had found in favor of Plaintiffs' position and that Plaintiffs' argument was "implausible." (Doc. 24.) Moreover, Defendants' point to this Court's ruling denying Plaintiffs' request for a three-judge court. A three-judge court, as Defendants correctly

6

assert, is unnecessary where the plaintiff's claim is constitutionally insubstantial or without merit. See LaRouche v. Fowler, 152 F.3d 974, 982 (D.C. Cir. 1998); Saint Landry Parish Sch. Bd., 601 F.2d 859, 863 (5th Cir. 1979); Goosby v. Osser, 409 U.S. 512, 518 (1973); Bailey v. Patterson, 369 U.S. 31, 33 (1962). In fact, this Court held that Plaintiffs' claim was "clearly foreclose[d]" by the Supreme Court's decision in Shelby County, and thus Plaintiffs' claims were constitutionally insubstantial and without merit.

In response, Plaintiffs assert that they did, in fact, present substantial evidence to support their claim. The Court disagrees. For one, Plaintiffs point to a January 17, 2014 letter from Deputy Legislative Counsel H. Jeff Lanier to Representative Wayne Howard in which he concluded that the 2012 DOJ objection was still valid. Plaintiffs' other evidence relates purely to the ruling in Shelby County, in which they allege the Court did not hold or suggest that objections made after 2006 were unconstitutional, but rather that the coverage formula could not be used as a basis for preclearance. This evidence is identical to that presented to the Court in opposition to the motion to dismiss, where this Court held that Plaintiffs' claims were "constitutionally insubstantial and without merit." Finally, and seemingly in response to the Court's Order stating that no courts have accepted Plaintiffs' position, Plaintiffs supplied this Court with a recent decision out of the Eastern District of Virginia which they assert holds that Shelby County does not apply retroactively. Page v. Va. State Bd. of

7

Elections, et al., No. 3:13-cv-678 (E.D. Va. Oct. 7, 2014). That decision, however, simply states that because the preclearance formula was in effect when plans were drawn, complying with the law was a valid state interest.

Thus, the Court holds that Defendants' were prevailing parties under the language of the Voting Rights Act and 42 U.S.C. § 1988, and that Plaintiffs' claims were frivolous, unreasonable, and without foundation in light of the Supreme Court's holding in Shelby County. Accordingly, attorneys' fees are appropriate in this matter.

B. **Calculation of Attorneys' Fees**

Having decided that fees are warranted, the Court now addresses the amount of fees to be awarded.[1] This task is accomplished by multiplying the number of hours reasonably expended by a reasonable billing rate. Blum v. Stenson, 465 U.S. 886, 897 (1984); Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The product of that calculation is called the "lodestar." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986).

In Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974),[2] the Fifth Circuit enumerated twelve factors that may be considered in calculating a lodestar amount. See also Blanchard v. Bergeron, 489 U.S. 87, 91-92 (1989); Hensley v.

---

[1] Defendants state in their motion that due to electronic filing and the tight timeline of the case, Defendants did not incur any recoverable costs. (Doc. 28 at 13.)
[2] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

8

Eckerhart, 461 U.S. 424, 434 n.9 (1989). These factors are: (1) the time and labor required, (2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Williams v. Bd. of Comm'rs of McIntosh Cnty., 938 F. Supp. 852, 857 (S.D. Ga. 1996) (citing Johnson, 488 F.2d at 717-19).

### i. *Hours Reasonably Expended*

In determining the number of hours reasonably expended, the Court must consider whether the work sought to be compensated was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Del. Valley, 478 U.S. at 561 (citations omitted). Courts must exclude hours that were "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434.

Defendants provided extensive records of the following hours worked by Anne Lewis, Bryan P. Tyson, and John J. Park:

| | |
|---|---|
| Lewis: | 21.6 hours |
| Tyson: | 27.8 hours |
| Park: | 14.5 hours |

After reviewing the attached affidavits and extremely detailed billing records provided by Defendants, the Court finds that the requested hours should be compensated with respect to all three attorneys. Defendants' efforts in litigating this matter were sufficiently, competently, and expeditiously covered by their counsel. The time logs enumerate considerable time spent in preparing the pleadings, various briefs, and other court filings. Furthermore, when comparing the time logs, there appears to be no duplication of effort. Specifically, Defendants show that legal research took 4.8 hours, drafting pleadings took 30.8 hours, internal conferences took 7.4 hours, conferences with the client took 5.8 hours, and preparation of the fee petition took 15.1 hours. Based upon a thorough review of the billing entries, the Court finds that the hours expended were reasonable.

### ii. Reasonable Hourly Rate

A reasonable rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299; see also Blum, 465 U.S. at 895-96. It has been held that voting rights attorneys possess skills comparable to attorneys practicing in complex areas, such as antitrust law or

highly technical bankruptcy matters. Williams, 938 F. Supp. at 858. Moreover, the relevant legal community is the district in which the Court sits, that being the Southern District of Georgia. See Knight v. Alabama, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) (citing Turner v. Secretary of Air Force, 944 F.2d 804, 808 (11th Cir. 1991)).

The party seeking an award of attorney's fees bears the burden of establishing that the requested rate is reasonable. Blum, 465 U.S. at 895-96 n.11; Norman, 836 F.2d at 1299. This burden may be met by a showing of an attorney's hourly billing rate on cases with similar complexity and skill. Knight, 824 F. Supp. at 1028.

Defendants have requested an hourly rate of $250.00/hour per attorney. Each requested rate will be evaluated in turn.

### a) Anne Lewis

Voting Rights Act litigation is, in and of itself, an extremely complex and intimidating area of the law. See Medders v. Autauga Cnty. Bd. of Educ., 858 F. Supp. 1118, 1125 (M.D. Ala. 1994) ("[E]ven the simplest one-person-one-vote case would be formidable to an attorney unfamiliar with the voting rights law."). As a result, attorneys practicing in this area must possess much skill and experience, two qualities that Ms. Lewis enjoys.

Ms. Lewis requests a fee of $250.00 per hour, which the Court notes is $100.00 per hour less than her standard rate in such cases, a substantial reduction by all accounts. In support of that rate, she supplied an affidavit that clearly details her twenty-five (25) years of experience litigating matters including

11

redistricting and voting rights, as well as the affidavit of David F. Walbert, an attorney familiar with Voting Rights Act cases and Ms. Lewis, who states that a rate of $250 per hour is "significantly less than a 'reasonable rate'[.]" (Walbert Aff., Doc. 28, Ex. B ¶ 7.)

A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (internal quotation marks omitted). This Court has previously approved $250.00 per hour as a reasonable billing rate in the Augusta legal market. See Johnson v. YKK Am., Inc., No. 3:07-cv-048, doc. no. 171 (S.D. Ga. April 29, 2010); Ingram v. Kellogg's Sales Co., No. 1:09-cv-021, doc. no. 39 (S.D. Ga. Feb. 24, 2010); Salazar v. Milton Ruben Chevrolet, Inc., No. 1:06-cv-195, doc. no. 86 (S.D. Ga. Mar. 6, 2009). This billing rate is in line with other fee awards in other similarly complicated cases. See Fisher v. Trutech, Inc., No. 5:04-cv-109, 2006 WL 3791977, at *5 (M.D. Ga. Nov. 16, 2006) (finding that based on the complicated and specialized nature of the ERISA action, together with the attorney's twenty years or more of experience and prevailing rates in the Middle District of Georgia, a billing rate of $200 was reasonable); see also Grable v. Gregory J. Barro, PLC, No. 1:05-cv-3133, 2007 WL 879584, at *5 (N.D. Ga. Mar. 20, 2007) (finding the relevant range of billing rates to be $175-$380 per hour in other cases from the Eleventh Circuit, including ERISA

cases). Upon consideration of the circumstances of this case, the relevant legal market, and Ms. Lewis' considerable experience and expertise, her billing rate will be set at $250.00 per hour.

### b) John J. Park

As with Ms. Lewis, the Johnson factors addressing the time limitations imposed and complexity of the case are relevant, as is the skill of Mr. Park. Mr. Park has served as counsel within the Alabama Attorney General's office for twelve (12) years and currently represents the State of Alabama as outside counsel in a significant Voting Rights Act case. (Walbert Aff. ¶ 6.)

Mr. Park also has agreed to a fee of $250.00 per hour. A review of Mr. Park's billing records indicates that such a fee is more than reasonable for his level of experience and the efforts expended in this matter. Thus, the Court determines that a rate of $250.00 per hour is appropriate.

### c) Bryan P. Tyson

Mr. Tyson is an associate with Strickland Brockington Lewis LLP, and previously served as a policy staffer during the 2006 renewal of the Voting Rights Act in the United States Congress. (Walbert Aff. ¶ 5.) Additionally, Mr. Tyson is currently the chair of the Appellate Practice Section of the State Bar of Georgia and has seven years' experience as a litigator, including involvement in election law cases. (Id.) Thus, and for all the reasons previously stated, the Court finds that the requested rate of $250.00 per hour is reasonable for Mr. Tyson as well.

### 3. *Lodestar*

Based on the above, the Court finds the lodestar in this case to be calculated as follows:

| | | |
|---|---|---|
| Lewis | $250.00/hour at 21.6 hours | $5,400.00 |
| Park | $250.00/hour at 14.5 hours | $3,625.00 |
| Tyson | $250.00/hour at 27.8 hours | $6,950.00 |

The total lodestar, therefore, in this case is $15,975.00.[3] The Court recognizes that Defendants also request an additional $1,125.00 for the 4.5 hours spent responding to Plaintiff's reply brief. (Doc. 31 at 5.) The Court, however, denies the Defendants' request and does not include those 4.5 hours in its lodestar calculation.

## IV. CONCLUSION

Accordingly, Defendants' motion for reasonable attorneys' fees (doc. 26) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiffs for $15,975.00 in attorneys' fees.

**ORDER ENTERED** at Augusta, Georgia, this 10th day of November, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[3] At this point it is usually necessary to determine whether the lodestar should be enhanced or diminished. Williams, 938 F. Supp. at 859 n.9. Neither party has asked for such an adjustment, and the Court has found that no adjustment is necessary. Id. (citing Del. Valley, 478 U.S. at 565-66 (noting the strong presumption that the lodestar amount represents the reasonable fee award and, thus, the lodestar should only be adjusted in rare and exceptional circumstances)).